Jr. Appellant by Chuck Bratz. Mr. Bratz? Thank you. Please, the Court. Madam Clerk, Mr. Bailiff, Counsel to the State. Your Honors, my name is Chuck Bratz, and I'm here on behalf of the Appellant, Coy Russell. Justice Staudter, in his dissenting opinion in the People v. Bailey case, stated that evidence of child molestation carries a particularly high risk of prejudice to a defendant. He went on to state that there are few crimes more heinous and evoke more outrage than sex crimes with a child victim, and as such, evidence regarding such crimes is highly inflammatory, and its prejudicial taint is unlikely to be cured by a trial court's admonitions to disregard the evidence. Justice Staudter then cited to our Supreme Court decision in People v. Sepsic in stating that driving a nail into a board and pulling it out does not remove the hole. Keeping in mind that you have read the briefs, I would like to focus my comments this afternoon on the trial court's denial of my motion for mistrial at the conclusion of the direct examination of the alleged victim in this cause. Even though by striking all of her testimony as to events outside of the time period of May 1, 2007 to August 23, 2007, as listed in the Bill of Indictment, virtually all of her testimony in direct examination was then not to be considered by the jury. And if time permits, I'll also comment on the failure of the people to establish the appellant's guilt and the inappropriateness of allowing introduction of the 11510 statement to the professional interviewer, who is acting as an arm of the state. In looking at the evidence in this case, it is undisputed that Corey Russell and his family lived in a hotel, the Homestead Suite from Lombard, Illinois, from May of 2007 until July 7 of 2007. Therefore, since the alleged victim did not claim that any inappropriate touching occurred at a hotel, and since the trial judge, when finally ruling on my foundational objections at the end of the direct examination of the alleged victim, struck all of her testimony outside of May 1, 2007 to August 23, 2007, as stated, this leaves us with a relevant time period of July 7 of 2007 to August 23 of 2007, a period of 48 days. Upon analyzing the alleged victim's courtroom testimony to see what was left for consideration, after the testimony outside that time period was stricken, there was really no testimony at all from the alleged victim left for the jury to consider. What this left was the jury to sift through and attempt to disregard a literal quagmire of testimony regarding allegations of other offenses, which were clearly outside the relevant time period, when basic human nature would affirm that it's virtually impossible for a jury to disregard testimony of this kind just because the trial court tells them that it's stricken. There are also numerous and obvious inconsistencies and gaping holes which arose during the alleged victim's testimony. She came up with a claim for the first time during trial that she was wearing a hat or a towel over her head so that she couldn't see what was going on. Before that, she had always stated that she had simply closed her eyes. She also said for the first time during my re-cross examination that she had actually seen the appellant's penis during an episode of vaginal intercourse after repeatedly denying that she knew what allegedly went inside of her in every other statement she'd made to that point. She described more than once what allegedly went inside of her as being hard and mushy, clearly in contradictory terms. Her statement that the inappropriate touching started when she was eight or nine, of course, would have been stricken as part of the court's ruling. Her testimony as to events at other houses other than 107 Somerset in Bolingbrook, Illinois, would have been of no help to the prosecution because that also would have been stricken. The alleged victim did not remember the time of year or whether she was in school when any inappropriate touching occurred. She was asked, do you remember the time of year? She said, no. She was asked, was it toward the end or beginning of the year? She was not sure about that. She was asked, were you in school? She said, I don't think so. She was asked, were you on a break from school? She said, I don't think so. That was followed by, well, you would have had to have been in school because you said you weren't on break the last time this happened, to which she answered the affirmative, which was followed by, do you recall if you would have been in school, which she answered, no, I don't. She also testified that there was an incident of purported vaginal intercourse, which happened in the summer, but she never established nor was she asked which summer that they were referring to. So that testimony would have been stricken as well. She stated that there was also inappropriate conduct with her mouth, but there was never any mention as to when this occurred, and that testimony would have also been stricken. She claimed that the appellate told her not to tell anyone at the time of the inappropriate touching, but there's no foundation laid as to when that occurred, and that evidence would have been stricken. She was then asked if she remembered when the last time any conduct allegedly made with her butt, at which time she said no, that evidence would have been stricken. She then said during the summer of 2007 that inappropriate conduct happened in three separate houses of the appellant, which would have been stricken obviously as to two of the homes, and there's no details given as to what happened in the third. She testified as to an event that allegedly happened in the basement, but didn't remember that this happened during the summertime, so that would have been stricken. And also her description of the alleged basement incident was contrary to the mention of a basement incident to the 11510 interviewer. She testified briefly as to an allegation of oral sex. Again, there's no mention of this occurring during the summer of 2007, so it was stricken. But doesn't she say that she was certain that it was in the same house? She does mention at one point that she was certain that something happened in the house. It's unclear the time frame as to whether or not that was before August 23rd or not. She never really at any point really clarified as to when it was it disoccurred. She also gave very contrary testimony. Then on cross-examination, when I asked her specifically what the time periods were left with, which was May 1st to August 23rd of 2007, knowing that they had not lived there up until July 7th, I asked her about May 1st to July 4th. She said that there may have been one incident that happened then. When I asked her do you specifically remember anything happening after July 4th to the end of summer, and I specifically referenced August 23rd, and she said that she could not speak of any particular incident that happened during that time frame. What we're left with then is a trial court ruling that in denying our motion for mistrial, we're asserting respectfully, was clearly erroneous and served to deprive Mr. Russell of his right to a fair trial. The trial court in stating that any mention by the alleged victim of what might have occurred outside the bailiff indictment time frame, to quote, is minimal, it was without any detail, and that's why it was stricken, totally misconstrued and distorted the evidence presented. There's no motion made by the people or any ruling by the court to allow any other crimes evidence into this case other than the 115-7.3 issue, which is something totally separate. And there was clearly no adequate foundation for any such testimony that it was not thus stricken. We're asserting again that the appellant was deprived of his right to a fair trial by the court noting my continuous and ongoing objections to the lack of foundation, not ruling on these objections, and thus allowing the jury to hear lengthy testimony by the alleged victim about alleged sex acts by the appellant, and then turning around and striking almost all and certainly most of the relevant parts of her testimony as if any jury could then just disregard this highly inflammatory evidence. We're contending respectfully that Justice Stout was right. That's not likely to cure the problem, and it did not cure the problem in this case. We also would cite briefly to the Hall decision that the erroneous admission of other crimes evidence calls for a reversal if the evidence was a material factor in the defendant's conviction, and without the evidence, the verdict likely would have been different. And I think we'd be hard-pressed to say that the alleged victim's testimony here would not have been a material factor in the jury's determination. And we also must be mindful of the fact in this case that we had a situation where there was no physical or medical corroboration, and so the heart and soul of the people's case against the appellant was the statements of the alleged victim. Now, not only should the motion for mistrial have been granted and not doing so serve to deprive the appellant of his right to a fair trial, but in addition, once we analyze what is left over of the people's case, once you strike out all the alleged victim's testimony outside the relevant time period, there is simply not enough evidence left to convict the appellant of any one of the three alleged acts of sexual misconduct that he was charged with, and therefore we contend that the guilty verdicts were improper and against the manifest way of evidence under the Collins standard. As to that point, the people in their brief seem to conceive there's some inadequacy of the alleged victim's trial testimony and therefore attempt to rely on the 11510 statement to the professional interviewer to sustain the jury's verdict. They specifically argue that the jury could have found the 11510 statement more complete and trustworthy than the trial testimony. However, when we revisit the issue of the 11510 statement to the professional interviewer, who was clearly operating as an agent for the police since Detective Brevis admitted that he and others were feeding questions to her, and where we have a combination of substantial donor intervention and a delay in the report of any alleged misconduct, and where we have the initial alleged outcry being prompted only after pointed questioning by the alleged victim's father, specifically referencing the appellant, coupled with no significant details allegedly provided to the father, followed by, according to the father's testimony, many conversations that took place in their home between his wife, the child's stepmom, his daughter, the alleged victim, and himself, which leads then to the alleged victim's 11510 statement, where the alleged victim states she thinks that the last incident occurred six weeks ago because that is what my stepmom thinks. The interviewer asks, why would your stepmom think that, to which the minor replies, because she was talking to me about this yesterday. There is no doubt, according to our record, that adult intervention has occurred. In addition, the appellant would also argue that it's inappropriate to allow the 11510 that exceeded the trial testimony that was allowed after the court struck the vast majority of the alleged victim's testimony. So we have a 11510 statement that goes into things that happened when she was 8 or 9, that happened in other homes, that has now been stricken as part of the direct testimony itself. It would be equally inappropriate to allow the testimony of the victim, where, as I mentioned, she talks about, in the 11510, being 8 or 9, talks about three houses, and an examination of the statement to the professional examiner reveals other issues as well, such as when was the last time that you were at the appellant's house? She says, I don't know, after referencing what her stepmother thinks. That was very good. Thank you. Which was followed by a series of suggestive and leading questions by the interviewer, asking her, did you see anything that was put inside her, followed up by then suggesting, was it his private parts or something else, followed up with an anatomical drawing to elicit evidence out of her. There's no real time frame that's ever established, based even on the suggestive and leading questions other than last summer, and no time foundation that's established as particularly as to any anal or oral sexual allegations. As I mentioned, the minor confirmed over and over she didn't see his, quote, privacy, in the quote because her eyes were closed. And then she was questioned about the morality of what happened in the issue of punishment, which obviously showed the circumstances of the 11510 examiner were such that they were clearly designed to prepare a document for a criminal prosecution as opposed to the agenda of just gathering information, which we contend shows a complete insufficient safeguard as to reliability. We also ask the alternative, of course, that you would take a look at the 115-7.3, where we think that allowing that testimony was extremely prejudicial, and when you look at the testimony, even what they presented was two years apart from what they said they were going to present, and the defendant was living in another home at the time than what the witness said. And then finally, as to the sentence, you have a man with no prior record, with lots of mitigation, and you almost maxed the man out with the only real statement being it tore up the family, which would be inherent in this kind of case. We just believe that there is error throughout this record. We're asking you to reverse the convictions on the multiple basis stated, and also in the alternative to reconsider the sentence. Thank you. Thank you, Mr. Bratt. Ms. Kelly? May it please the Court, Counsel. The people will not be giving a closing argument. It almost sounded to me as if we were getting another closing argument. In this case, as the people responded with regard to the issue about the denial of the motion for mistrial, it's the people's position that the trial judge actually erred in striking all of the testimony. That was beyond the dates. The crime of predatory criminal sexual assault of a child is such that, of course, the victim is often very young. In this case, the victim was 10 years old when her father became aware that something had perhaps happened. The timeframe chosen for the indictment was May 1st to August 23rd of 2007 because the information that he had and that she had was that it occurred during the summer. During the summer, the 10-year-old would live with her mother and then go to her aunt's house to play with her cousin. And the defendant, of course, is the aunt's husband. And then once school would have started, which must have been around August 23rd, of course, she would no longer have been going to her aunt's house, no longer have been living with her mother, and no longer have been over there. So when her father became aware of a concern and he spoke with the 10-year-old and she initially denied it and then she started crying and told him what happened. And he stopped asking questions and then turned it over to the Children's Advocacy Center. At that time, they took a statement for the purpose of having her interviewed only once. And that occurred within a few weeks of the end of the assault. And therefore, the 10-year-old's memory at that time and recall of details at that time would have been better than it was two and a half years later when she's in court and she's being asked all these questions. And frankly, people did not concede the inadequacy of her trial testimony, but did concede that she had less of a grasp on details and time two and a half years later than she did a few weeks after the assaults ended. The questions that the people asked that elicited the statement that it began when she was 8 or 9 years old are not improper. The defense does not address itself to the cases cited by the people that in cases of a molestation of a child, that other incidents between the parties can come in outside of the indicted time period. There's no need for a motion for other crimes evidence. And the purpose of it is to show the familiarity between the parties. There are several cases, there are several third district cases on point that the people have cited in their brief. Therefore, it was the people's position below and the people's position now that the judge actually erred in excluding all of that testimony and certainly did not err in denying the motion for mistrial. There was no need for a mistrial, even if the jury had in fact disregarded the judge's instructions and considered any of that evidence, it would not have been improper in this type of a case. Additionally, the 11510 statement was admitted as substantive evidence and all of that evidence was properly before the jury. When the judge held her 11510 hearing, she gave a very detailed ruling and she excised certain portions of that DVD. If this court would look at the transcript, you can see that they're physically exiled. If the court reviews the DVD, you can see that they've been excised from the DVD. It flows smoothly without those questions, without those answers, without the information that the judge felt was improper. When the DVD then was played in open court, all of that information is substantive evidence for the jury to determine. This may be a case, there are other cases, as the people cited in their brief, where the information given by the victim was more clear and more detailed at the time of the victim-sensitive interview shortly after the assault ceased. And in that interview, she recalls specifically three incidents that happened during that summer, and the juror just concluded that she had spent with her mother and referenced three incidents. The last incident in his bedroom where he entered her vagina with his penis and that was the time that her cousin Jasmine came up and more or less caught on to what was perhaps going on. And then the time before that was the time when she said there had been oral contact with her mouth with his penis and one other time in the basement in that home that summer where he had entered both what she considered her front private and also what she called her butt. Therefore, the evidence certainly in the DVD established all three offenses charged by the people. That evidence was properly before the jury. The judge did not abuse her discretion in her ruling on the reliability of that statement and the people would stand on their brief for the rest of the argument. Let me just ask you, Mr. Brett's got a chance to get to it. We've got a lot of issues in this case, so I'm going to ask, just in case, I'll break the rules here and let him talk about it on his rebuttal if he wants to. What about the testimony of the cousin? The testimony of the cousin was there seemed to be some confusion during the hearing, the pretrial hearing on whether the evidence was admissible as to when it had occurred. In the police report, she had apparently told them that she had come up here to visit her mother when she was 10 and that would have been the summer of 2000. But when they had the proper hearing, for some reason it got translated into the summer of 2001. And at that time then the judge thought she was, and she had a birthday that occurred after the end of summer, so thought she might have been 12 years old and it might have been six years earlier. In fact, when she testified at trial, she had gone back, she had consulted a picture book she had taken and verified that in fact it was the summer of 2000. She was 10 years old. She had not yet had her birthday. She had come up with her brother. And the people pointed out that the police report that had been given to the defendant at all times had said she was 10 years old in the summer of 2000. So with that information, the people continued to submit that the judge's determination that there was a six or seven year gap in time was not too remote, that there was more than a threshold similarity between the offenses. There was a great factual similarity. Both girls were 10 years old. Both girls were asked to come up to the bedroom to help with folding laundry. Both girls were unable to see and were told to take their clothes off. And most importantly in both cases, he was able to have access to both girls because of the familiar relationship, because he was the stepfather of J.S. and then the step-uncle of our victim here, A.L. So I hope that answers your question with regard to that. Had she ever told anybody else about this? Had she? No, she did not until this came out. And then a family member went down to Texas to visit her, and that's when she told them. I don't believe she had mentioned it earlier, no. Thank you, Ms. Kelly. Mr. Bratz. Thank you. And I didn't know if you wanted to talk about that or not. Yeah, I was going to bring some questions in. Thank you, Justice. I'll give you an opportunity to do it. The interesting part in reference to the cousin is that nothing comes out of the cousin until, let's put it in this case, mother goes to Texas, and then all of a sudden now we have this coming out at a time when she is working with the mother in reference to the issue of getting custody back of one of her two children that she no longer has custody of because of her being an habitual, binging, crack cocaine user, in addition to the other things that came out about her. We also have the situation where the time period that they notified us of is two years different from when she testified at trial, and the fact that she says that this incident occurred in a house that the evidence established that the defendant didn't even live in at the time when she's saying it occurred. So there were lots and lots of questions raised in reference to whether or not it was appropriate to allow the testimony of the cousin in, and the way of doing so, we believe that in and of itself it created a reversible error, and we would ask you to so find. In reference to the State's, I guess, tongue-in-cheek comment about she's not going to make a closing argument, I didn't know that that's what I was doing, but I thought I was discussing the evidence. But the plain and simple fact was that what we look at is once the court rules that, in fact, after disregarding my continued foundation objections to the point where then she's going to rule on everything all at once, the trial court created the scenario where then all of this comes out before the jury without a proper foundation, and then at that point the jury is left to sort this out after they've heard all this highly inflammatory information. And for the State to rely on you and say, no, you should not rule in favor of the appellant's appeal because we think it would have not been improper for the jury to disregard the court's instructions, I think that that's very tenuous ground for the State to be relying on in order to try to buttress their position here. And the bottom line is when you look at the 11510, there's the same issues there. When she talks about, well, there was clearly these three things. There was some leading questions that had to do particularly with any allegations in reference to contact with the butt or contact with the mouth, but none of that is established within the context of the time frame that the court set in reference to when the offense would have had to have taken place in order for a proper verdict to be entered. And this was a case where we did file a motion for bill of particulars, which was denied, and at that point then in readdressing the issue of the time frame at the conclusion of the alleged victim testimony, the court then limited to the time period within the bill of indictments being proper. Instructed testimony, and we certainly don't have a problem striking it, but it was the manner in which it happened because rather than ruling on the foundation objections as I made them, she allowed all the inflammatory evidence to accumulate before the jury and then tried to cure it with a simple disregard instruction, which we think is woefully insufficient. Anything else? Okay. Thank you. Thank you, Mr. Bratz. Thank you, Ms. Kelly. Both of you here are going to serve this afternoon. The matter will be taken under advisement with the disposition of the issued. And for a few moments, this court will be in recess for panel discussion. Thank you.